UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ANDREW M. HORNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:15-cv-00284-LJM-MJD |
| | ) | |
| STATE OF INDIANA including the | ) | |
| INDIANA SECRETARY OF STATE, in her | ) | |
| official capacity; members of the INDIANA | ) | |
| ELECTION COMMISSION, in their official | ) | |
| capacities; members of the INDIANA | ) | |
| GENERAL ASSEMBLY, in their official | ) | |
| capacities; and INDIANA GOVERNOR, in | ) | |
| his official capacity, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION TO DISMISS

Defendant, the State of Indiana, including the Indiana Secretary of State, the Indiana Election Commission, the Indiana General Assembly and the Governor of Indiana, all in their official capacities (collectively, "Indiana"), has moved to dismiss Plaintiff Andrew M. Horning's ("Horning's") Complaint in which he challenges the nomination system of the State (the "Motion"). Dkt. No. 7. Indiana asserts that the major political party ("MPP") statute at issue is substantially similar to that upheld as constitutional in *American Party of Texas v. White*, 415 U.S. 767 (1974), therefore, Horning cannot state a claim as a matter of law. In addition, Indiana asserts that Horning lacks standing because he cannot show a sufficiently concrete injury that is traceable to any of the individuals or entities sued in their official capacities. Horning opposes the Motion and contends that the Indiana MPP statute is substantially different from that in

*American Party*, and that he has standing because has been denied access to the State Primary currently and as a non-MPP candidate in the past.

For the reasons stated herein, the Court **GRANTS** Indiana's Motion to Dismiss.

## I.  FACTUAL BACKGROUND

Horning alleges that Indiana Code § 3-5-2-30 violates the equal protection clause of the Fourteenth Amendment to the U.S. Constitution and Article I, Section 23 of the Indiana Constitution because it creates "two unequal classes of citizens in terms of political and electoral rights, powers, privileges and immunities."  Compl. Introduction. Indiana Code § 3-5-2-30 states:

> "Major political party" refers to:
>
> > (1)  with respect to the state, either of the two (2) parties whose nominees received the highest and second highest numbers of votes statewide for secretary of state in the last election; or
> >
> > (2) with respect to a political subdivision, either of the two (2) parties whose nominees received the highest and second highest numbers of votes in that political subdivision for secretary of state in the last election.

Horning alleges that, by operation of this definition, under other statutes, he has been barred from primary elections; "denied the special status, organizational and political powers granted to only the MPPS;" and denied equal status as a candidate on the ballot. Compl. ¶¶ C1-C7 (citing Ind. Code §§ 3-10-1-2, [3-]6-4.1-4, 3-12-10-2.1, 3-10-1-4, 3-13-1-5, 3-13-1-6, 3-6-1-15, 3-10-1-15).  Horning claims he was harmed by operation of the MPP statute because it required increased effort and personal cost to run as a non-MPP candidate and he has routinely experienced public disrespect and derision as a "third-party" candidate.  Compl. ¶ C7, C9-C11.

Horning requests that the Court enjoin Indiana from holding a tax-payer supported primary election as set forth in Indiana Code § 3-10-1-2 and end MPP status as set forth in Indiana Code § 3-5-2-30; declare these sections of the Indiana Code unconstitutional; award any other injunctive and/or declaratory relief available; and award Horning his costs, fees and reasonable expenses.  Compl. ¶¶ D2-D5.

Indiana Code § 3-10-1-2 states:  "Each political party whose nominee received at least ten percent (10%) of the votes cast in the state for secretary of state at the last election shall hold a primary election under this chapter to select nominees to be voted for at the general election."

The other statutes cited by Horning that he believes are biased in favor of MPPs include: (a) the statute identifying the members of the state recount commission, which includes "the state chairman of each of the major political parties," and the secretary of state, Ind. Code §§ 3-12-10-2.1 & 3-6-4.1-4 (explaining the nominating process for same and limiting it to MPPs); (b) the statute identifying the primary election process for selecting candidates for certain offices if the political party satisfies the requirement in Indiana Code § 3-10-1-2, Ind. Code § 3-10-1-4; (c) the statute regarding the processes for filing vacancies in legislative offices, which is an appointment in the case of an MPP, but a special election in the case of a non-MPP, Ind. Code § 3-13-5-0.1; (d) the statutes dealing with the powers of precinct committeemen, Ind. Code §§ 3-13-1-4, 3-13-1-5 & 3-13-1-6, and the lack of restrictions placed on same, Ind. Code § 3-6-1-15; and (e) the statute regarding the type of primary election ballot required for each political party, which Horning alleges makes "alternative candidates not just inconspicuous to voters, but also of a lesser implied value."  Ind. Code § 3-10-1-15.

## II. <u>DISCUSSION</u>

The Court must address Indiana's standing argument first because it is a subject matter issue.  *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 131 S.Ct. 1197, 1202, 179 L.Ed.2d 159 (2011) (stating that "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction").  As a jurisdictional requirement, Horning has the burden of proof.  *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citing *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999)).  In a facial challenge to jurisdiction, the Court accepts all material allegations of the Complaint as true and draws all reasonable inferences in favor of Horning.  *Id.* at 443-44.  However, to the extent that Indiana has made a factual challenge to Horning's standing, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Id.* at 444 (quoting *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) (further citations omitted)). Standing is a three-part inquiry where Horning must adequately establish: (1) an injury in fact that is a concrete and particularized invasion of a legally protected interest; (2) causation; and (3) that the injury he complains of will be remedied by the relief he seeks. *Sprint Commc'ns Co. v. APPC Servs., Inc.*, 554 U.S. 269, 300 (2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Here, Indiana asserts that Horning's claim that the MPP statute deprives him of the ability to hold in a primary election is untrue because all political parties whose candidate for secretary of state in the previous election received 10% or more of the votes may hold a primary.  Even if it is a deprivation, Indiana continues, there is no causal

connection between this harm and Horning's status as a non-MPP candidate.  Dkt. No. 8 at 6-7.  Further, Indiana argues that even if the Court accepts as true Horning's claim that he is injured as a taxpayer because he is forced to provide support to his MPP opponents, such an injury is too generalized to support Article III standing.  Dkt. No. 11 at 2-3.  Finally, Indiana states that this Court cannot entertain jurisdiction over any of the State Defendants.  Dkt. No. 8 at 12-14.

Horning asserts that the Fourteenth Amendment expands federal authority over States to enforce individual rights.  Dkt. No. 10 at 2.  In addition, Horning states that Indiana Code § 3-8-4-10 operated to bar him from primary elections in 2000, 2002, 2006, 2008, 2012, and 2014, and will act to bar any candidacy in 2016, which establishes injury in fact and a causal connection between the unlawful unequal treatment and the injurys. *Id.* at 3.  He also claims that he is further injured by operation of Indiana Code § 3-8-6-3, which requires a petition of nomination be signed by a certain percentage of voters within an election district in order to be put on the ballot, which is an extra burden for any non-MPP candidate.  *Id.* at 4.  He further appears to invoke taxpayer status as another reason that he has standing.  *Id.*

Even if the Court accepts as true Horning's vague factual allegations in the Complaint regarding his attempts to run for public office as well as the factual allegations in his Memorandum in Opposition to Defendants' Motion to Dismiss ("Opp'n") regarding the same subject, the Court concludes that Horning has not met his burden to show standing because there is no connection between the MPP statute and the alleged injury Horning claims.  The requirement to hold a primary election is not tied to MPP status. *See* Ind. code § 3-10-1-2 (requiring any party that receives more than 10% of the votes

from the preceding election for secretary of state to hold primary and never mentioning MPP status).   Further, even though Indiana Code § 3-8-4-10 requires a different nominating procedure, a convention, for parties that receive between 2% and 10% of the votes in the prior election for secretary of state, there is no mention of MPP status and therefore no connection between the MPP statute and any alleged harm to Horning.

In his "Reply in Opposition to Defendants' Motion to Dismiss," which the Court will construe as a Surreply,[1] Horning asserts that the harm is to him as an individual.   Dkt. No. 12 at 1.   Specifically,

> It is currently fact that there is nothing any individual wishing to appear on Indiana's next primary ballot could do but run as an official MPP candidate. . . .   Plaintiff already proved that he was and still is, personally, denied access to primary elections by both statute, and present reality.

*Id.*at 2.   He also suggests that if a non-MPP could challenge the statute in *American Party*, then he should be able to challenge Indiana's similar statute here.   *Id.* at 2.   The Court cannot see how these arguments help Horning because there is still no connection between the challenged statutes and any alleged discrimination against him as an individual candidate.   Horning has not shown how the statutes that allow primaries for certain classes of candidates and conventions for others, as well as petitions for all candidates has impeded Horning's ability to run as a candidate for political office, which seems to be the gravamen of his Complaint.   To the extent that he is claiming that an individual cannot run for public office because the statutes make it cost prohibitive, his

---

[1] The Court notes that the Local Rules of this Court do not contemplate a surreply for motions to dismiss.   *See* S.D. Ind. L.R. 7-1(b) & (c).   In such circumstances, parties generally request leave of the Court and show the reasons that such a document should be considered by the Court.   In the absence of an objection from Indiana, the Court has considered Horning's memorandum in the form of a surreply.

6

claims are too abstract and the connection between the relief he seeks (as set forth in the Complaint) and his injury is not sufficiently concrete to be actionable.

Even if he has claimed a particularized injury that can be redressed by the relief that he seeks, the only possible defendant is the official responsible for holding elections, which is the Secretary of State. None of the other entities and/or elected officials is subject to suit under § 1983 because they simply have too broad of powers and little connection to enforcement of the relevant statutes. *See Back v. Carter*, 933 F. Supp. 738, 751-52 (N.D. Ind. 1996) (citing *Ex parte Young*, 209 U.S. 123, 157-58 (1908) (discussing the requirement for preventing conflict with the Eleventh Amendment when suits are brought against an officer of the state).

Again, even if Horning has standing, Horning has not stated a claim as a matter of law. It is settled that a statutory system that imposes different burdens on parties or individuals who seek to be placed on the ballot in a State are necessary to further compelling state interests when, alone or in combination, they are "reasonably taken in pursuit of vital state objectives that cannot be served equally well in significantly less burdensome ways." *American Party*, 415 U.S. at 780-81. The statutes Horning has cited in his Complaint and that he purports to challenge in his memoranda on the instant Motion are substantially similar to those in *American Party*; therefore, it is appropriate to rely upon the Supreme Court's analysis in *American Party* to assess his claims. The *American Party* Court made clear that there was no reasonable argument to support a conclusion that a State may not "insist that intraparty competition be settled before the general election by primary election or by party convention." *Id.* at 781. Further, the *American Party* Court could not "take seriously the suggestion . . . that the State has invidiously discriminated

against the smaller parties by insisting that their nominations be by convention, rather than by primary election." *Id.*  This Court agrees that Horning can present no argument or evidence that a convention is more burdensome than a primary election.  Moreover, to the extent that Horning intended to challenge the process of independent candidate status (which is not clear from the Complaint, but may be inferred from his briefs), the standard is that the State's requirement must be "invidious" and there is no colorable argument that the requirements for placement on the ballot as an individual, which from the statutes cited to the Court requires obtaining a certain number of signatures, is more burdensome than holding a primary election, with all of its attendant precursors.  *Accord American Party*, 415 U.S. at 1306-07.  Since at least three years before *American Party* it has been clear that there is "an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot – the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process in general."  *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

For the foregoing reasons, Defendant's, the State of Indiana, including the Indiana Secretary of State, the Indiana Election Commission, the Indiana General Assembly and the Governor of Indiana, all in their official capacities, Motion to Dismiss is **GRANTED**. This action shall be dismissed with prejudice.  The Court shall enter judgment accordingly.

IT IS SO ORDERED this 4th day of March, 2016.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

8

Distribution:

ANDREW M. HORNING
7851 Pleasant Hill Road
Freedom, IN 47431

Brian Lee Park
INDIANA ATTORNEY GENERAL
brian.park@atg.in.gov